568 P.2d 1153

**Richard L. MASON and Laura F. Mason, his wife, Appellants,**

v.

**Walter F. WILSON, Jr., and Jeanette C. Wilson, his wife, Appellees.**

**No. 1 CA–CIV 3058.**

Court of Appeals of Arizona,
Division 1, Department B.

Sept. 2, 1977.

Treon, Warnicke, Dann & Roush, P. A. by Linda K. Scott, Phoenix, for appellants.

W. Francis Wilson, Phoenix, for appellees.

## OPINION

EUBANK, Judge.

There are two issues in this case before us on appeal: (1) whether there was suffi-cient inequitable conduct in connection with a sheriff's sale of real property that, when coupled with a low purchase price, would justify setting aside the sale, and (2) whether owners or occupants of real estate are entitled to personal notice prior to execution and sale of real estate when the sale is being conducted to satisfy a judgment against a prior owner of the property.

The facts in this case are as follows. On November 1, 1972, a judgment was obtained against Lawrence and Frances Bowles. It was filed on November 10, 1972. Execution on the property was filed on November 14, 1972, at which time the Bowles owned real estate described as Lot 553, Scottsdale Estates Five. Subsequently, on April 1, 1973 (recorded April 12, 1973) the Bowles quitclaimed their interest in the real estate to Richard and Laura Mason, appellants. The Masons had been guarantors on an unrelated loan of the Bowles and had assumed payments upon the Bowles' default. No title search was made at the time of the Bowles-Mason transfer. Five months later, the Masons sold the property to Gordon and Carolyn Pekrul. During the course of the sale to Pekrul, a title search was made and the lien against the property was discovered. The Masons contacted the apparent lienholder on several occasions in an attempt to compromise and settle the judgment with a view to clearing title to the property. Meanwhile the lienholder was taking steps to sell the property at a sheriff's sale. The sheriff's sale was held on January 24, 1974, and a sheriff's deed issued to the purchaser at the sale, the lienholder, on July 25, 1974, for a purchase price of $367.41.

The action *sub judice* was brought by the lienholders, Walter F. and Jeanette C. Wilson, to obtain possession of the property and to quiet title to the subject realty. Richard and Laura Mason, defendants below, have appealed from a motion granting summary judgment to the plaintiffs and from the denial of a motion to set aside the sheriff's sale.

■ The first issue raised on appeal concerns the alleged inequitable conduct of the appellees. It is well-settled law in Arizona that a court, exercising its inherent power to control its own process, may set aside an execution sale either by notice, if it issued the process, or through an independent action, as long as it has equitable jurisdiction. *Nussbaumer v. Superior Court In and For County of Yuma,* 107 Ariz. 504, 489 P.2d 843 (1971).

■ A court may order an execution sale set aside on the basis of two grounds: First, the purchase price received at the sheriff's sale may be so inadequate as to shock the conscience of the court and justify setting aside the sale, *Nussbaumer, supra; Wiesel v. Ashcraft,* 26 Ariz.App. 490, 549 P.2d 585 (1976). Second, where there is an inadequacy of price which in itself might not be grounds for setting aside the sale, slight additional circumstances or matters of equity may so justify. *Johnson v. Jefferson Standard Life Insurance,* 5 Ariz.App. 587, 429 P.2d 474 (1967). The parties in the case *sub judice* are in disagreement over the value of the contested property. Affidavits by appellants suggest the net equity in the property to be valued at $6,353.00 whereas affidavits by appellees suggest the property's equity to be only $1,500.00 to $2,000.00; the mortgages were approximately $22,147.04. As the purchase price of the property at the sheriff's sale was $367.41, we feel that a 5.7% payment (taking the facts in the light most favorable to the appellant) alone is not enough in itself to justify setting aside the sale on appeal. *See Wiesel v. Ashcraft,* 26 Ariz.App. 490, 549 P.2d 585 (1976).

■ The parties, however, in conflicting affidavits, have raised various factors (such as the failure of the appellees' attorney to inform the appellants of the upcoming sheriff's sale when he knew they were interested in purchasing the judgment lien, the failure of the appellees' attorney to inform the appellants of the occurrence of the sheriff's sale so that they could then promptly exercise their redemption rights, and the fact that appellees and appellants may not have had equal knowledge concerning the procedures followed before and after the sale) which may have created an unfair situation. Whether there were such factors involved here should have been determined in an evidentiary hearing. *Laz v. Southwestern Land Company, infra.* Therefore, we find that genuine issues of material fact existed and that it was thus improper to grant summary judgment on this issue.

■ The second issue raised on appeal is whether appellants Mason are entitled to have the sale set aside on the basis that the Masons failed to receive personal notice of the sale. The only notice that was given, as we understand the facts, was the posting at the sheriff's office and publication of the sale for four weeks. The law of this state is that once a judgment lien has attached to the land, it remains until legally removed and a purchaser from the judgment debtor who has actual or constructive notice of the lien will take the estate subject to the lien. *Freeman v. Wintroath Pumps—Div. of Worthington Corp.,* 13 Ariz.App. 182, 475 P.2d 274 (1970). So while the lien becomes a cloud on the title of the land, and constructive notice is given to all by virtue of its recordation, there is no actual notice required to be given at any stage of the execution proceedings. A.R.S. §§ 12–1551 to 12–1563, and § 12–1621, as amended.

■ Whether notice was required to be given in spite of the statute is a matter of constitutional law. The U. S. Supreme Court has held that notice and opportunity to be heard are fundamental requisites of due process. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The general rule that emerges from Mullane is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affect-

ed by the proceedings in question. Under the circumstances here, we disagree with appellee that a right to notice by appellants is a "frivolous" claim. Appellants, as well as the Pekruls, by virtue of their respective interests in the property were directly affected by the proceedings and should have received actual notice. *Laz v. Southwestern Land Company,* 97 Ariz. 69, 397 P.2d 52 (1964). *Cf. Kenly v. Miracle Properties,* 412 F.Supp. 1072 (D.C.1976).[1]

A United States Supreme Court case is quite similar to the case at bar. In *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), New York City wanted to divert a portion of a local river which was upstream from the appellant's land. The city instituted condemnation proceedings, and pursuant to statute, published and posted notices of the condemnation in conspicuous places in the vicinity of the real estate. Appellant and her family, however, occupied the premises for only two months a year, and as a consequence, were not aware of the proceedings or the availability of a damage action for injuries to her land caused by the river's diversion until after the statute of limitation had run. The court, following the rule in *Mullane,* held that the posting of the signs and the publication did not constitute the personal notice that *Mullane* required. The court went on to say that even if the appellant had received actual notice of the city's con-

demnation proceedings because of the obviousness of the changes in the river, the appellant still had a right to be heard on a claim for compensation for damages resulting from the river's diversion.

As this case is presented to us on appeal, it is unclear whether either the Pekruls or the Masons had actual notice of the execution sale. We therefore hold that genuine issues of material fact are presented in both issues raised on appeal, and we reverse the summary judgment. *See Ballard v. Lawyers Title of Arizona,* 27 Ariz.App. 168, 552 P.2d 455 (1976). *Cf. Olsen v. Goss,* 26 Ariz. App. 172, 547 P.2d 24 (1976); *Schaneman v. Dickerson,* 15 Ariz.App. 31, 485 P.2d 855 (1971).

This matter is remanded for further proceedings not inconsistent with this opinion.

SCHROEDER, P. J., and WREN, J., concur.

---

1. Unlike in *Kenly,* the appellee here is invoking the power of the state, rather than a private agreement, and as such, there is state action involved. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *North Geor-* *gia Finishing Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Thus the due process requirements of the Fourteenth Amendment are invoked.